**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| Building Materials Corporation of America | ) | |
| Asphalt Roofing Shingle Products Liability | ) | MDL No.: 8:11-mn-02000-JMC |
| Litigation, | ) | |
| ———————————————— | ) | |
| | ) | |
| James Morocco, individually and | ) | |
| on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 8:11-cv-02785-JMC |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Building Materials Corporation of America, | ) | |
| dba GAF Materials Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

This matter is before the court on Defendant Building Materials Corporation of America, doing business as GAF Materials Corporation's ("GAF"), Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 23]. Extensive memoranda in support of and in opposition to the motion have been filed by the parties.   Having considered the written arguments of the parties and the record before the court, GAF's motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

GAF is a Delaware corporation with its principal place of business in Wayne, New Jersey.  It manufactures roofing materials, including asphalt roofing shingles marketed under the Timberline® brand name, in facilities located across the United States and sells these shingles nationwide.  Plaintiff James Morocco ("Morocco") is a resident of Holiday, Florida, who alleges

that he arranged for the purchase and installation of Timberline shingles on the roof of his home. Pursuant to Morocco's warranty claim submission form, the shingles were purchased in or around July 2003. In purchasing the shingles, Morocco contends that he relied on certain representations made by GAF and its agents including, but not limited to, promotional statements marketing the shingles as having superior durability qualities and expressly warranting on the shingle packaging that the product complied with ASTM International ("ASTM") industrial standard D3462. He further alleges that the shingles installed on his roof were manufactured and sold to him with a latent defect that causes the shingles to prematurely crack, of which GAF was aware but intentionally failed to disclose to Morocco and other consumers. Morocco brings this putative class action against GAF asserting claims for breach of express and implied warranties (counts I and II); negligence, negligent failure to warn, and strict liability (counts III, IV, and VII); violation of the New Jersey Consumer Fraud Act ("NJCFA") (count V); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (count VI); fraudulent concealment/equitable tolling (count IX); and declaratory and injunctive relief (count VIII) arising from GAF's sale of the allegedly defective roofing shingles.

## LEGAL STANDARD

**Standard of Review**

To survive a motion to dismiss, the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and

the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal citations omitted). Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[1] Although the court must accept the plaintiff's factual allegations as true, any conclusory

---

[1] The parties disagree as to whether the court may consider Morocco's warranty claim form in addressing GAF's motion. GAF contends that Morocco has explicitly incorporated and referenced the claim in the Amended Complaint. Morocco argues that GAF is simply attempting to divert the court's attention away from the actual substance of the allegations of the Amended Complaint. Upon review of the Amended Complaint, it appears that Morocco expressly references the filing of his warranty claim and extensively quotes language from the text of the claim in partial support for his claim of breach of express warranty. *See* First Amended Complaint, ¶¶ 125-33 [Dkt. No. 18]. Accordingly, the court finds that it may consider the warranty claim in assessing GAF's motion. *See Beasley v. Arcapita, Inc*., 436 F. App'x. 264 (4th Cir. 2011) (acknowledging that a court may consider documents attached to a motion to dismiss if such documents are integral to and explicitly relied on by the plaintiff in the complaint, provided that the plaintiff does not dispute the documents' authenticity); *but see Braun v. Maynard*, 652 F.3d 557 (4th Cir. 2011) (noting that, on motion to dismiss, the court should not consider a document not relied upon expressly by the plaintiff in the complaint).

allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**Choice of Law**

"This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. For diversity cases that are transferred in a [multi-district litigation], the law of the transferor district follows the case to the transferee district." *In re MI Windows and Doors, Inc. Products Liability Litigation*, Nos. 2:12–mn–00001, 2:12–cv–01256–DCN, 2012 WL 4846987, at *1 (D.S.C. Oct. 11, 2012) (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) and *Manual for Complex Litigation Fourth* § 20.132). This case was originally filed in the United States District Court for the District of New Jersey. Therefore, New Jersey's choice of law rules apply in this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (per curiam); *Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992).

The court may appropriately undertake a choice of law analysis at the motion to dismiss stage where the factual record is sufficiently developed to facilitate the resolution of the issue. *See id.* at 718 ("In order to decide whether choice of law analysis is appropriate at the motion to dismiss stage in this particular case, the Court will follow the guidance provided in *Harper*, and determine whether the choice of law issues 'require a full factual record' or not.") (citing *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009)). If the choice of law analysis requires the determination of purely legal issues or if the complaint provides the relevant factual information for the court's evaluation of the relevant factors, the court may properly

make a choice of law determination.  *See Montich*, 849 F. Supp. 2d at 445 ("whether a conflict

exists between the laws of the two jurisdictions — demands a purely legal analysis and requires

no factual record."); and *id.* at 448 (noting that the plaintiff's complaint included "sufficient facts

from which this Court can determine which law should apply" to the claims).

Morocco has essentially conceded the applicability of Florida law in all claims except the

NJCFA claim as he primarily relies on law from the United States Court of Appeals for the

Eleventh Circuit, the United States District Courts in Florida, and Florida state law throughout

his response memorandum and only challenges the choice of law issue as it applies to the

NJCFA claim.  Accordingly, the court will focus its analysis of the choice of law issue on the

NJCFA claim.

## DISCUSSION

### Proximate Cause

GAF first contends that Morocco's Amended Complaint must be dismissed because

Morocco has failed to allege "that he has suffered a cognizable injury that was proximately

caused by" the allegedly defective shingles.  Specifically, GAF argues that Morocco submitted a

warranty claim form purportedly claiming that the shingles installed on his home contained a

discoloration defect, and that the Amended Complaint does not contain any non-conclusory

allegations as to how the alleged discoloration defect constitutes an actual injury related to

Morocco's allegations that the shingles fail to comply with ASTM D3462.  In response, Morocco

notes that GAF ignores the substantive allegations of the Amended Complaint and focuses only

on the particular defect identified in the warranty claim form.

Liberally construing the Amended Complaint in favor of Morocco, as the court must at

the motion to dismiss stage of the litigation, GAF's objections to the sufficiency of Morocco's

allegations regarding proximate cause are misplaced.  Morocco's Amended Complaint contains multiple allegations of injuries which he contends are proximately caused by GAF's marketing and selling of shingles which purportedly fail to comply with ASTM D3462.  Accordingly, the court finds GAF's claims of insufficient allegations of proximate cause to be an inadequate basis upon which to grant its motion.  However, the court must now turn to GAF's arguments concerning Morocco's failure to sufficiently plead any cognizable injury.

**Tort Claims Based on Negligence and Strict Liability**

### A.  Economic Loss Doctrine

GAF contends that Morocco's tort claims of negligence, negligent failure to warn, and strict liability are barred by Florida's economic loss rule and, therefore, the court should dismiss these causes of action.

Under Florida law, "[t]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses" that result from "disappointed economic expectations" or "the loss of the benefit of the bargain." *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 and n.1 (Fla. 2004).  The rule bars recovery "(1) where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising out of the contract, or (2) where the defendant is a manufacturer or distributor of a defective product which damages itself but does not cause personal injury or damage to any other property."  *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216, 1213 (Fla. 2010) (citing *Am. Aviation, Inc.*, 891 So.2d at 536).

The purpose of applying the economic loss rule in circumstances where the parties are in contractual privity is to prevent the parties from avoiding the allocation of losses agreed upon in the contract.  *See Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1192 (M.D.

Fla 2008) (citing *Am. Aviation, Inc.,* 891 So.2d at 536). "Accordingly, 'courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.' A tort action is not barred, however, when the tort is 'committed independently of the contract breach.'" *Id.* (citing *Am. Aviation, Inc.,* 891 So.2d at 537). Additionally, courts applying Florida law have barred recovery under the economic loss rule where the only "other property" damage alleged by the plaintiff includes the consequential costs associated with the replacement of the defective product. *See Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 742 (11th Cir. 1995) (finding that a plaintiff could not recover under a tort sounding in negligence for defective plywood used in a housing project where the only damages alleged consisted of the defective plywood and the costs associated with replacing the adjacent roofing materials); *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993).

Here, the parties dispute whether Morocco has adequately alleged damage to "other property" to survive dismissal. GAF vigorously contends that Morocco has not alleged any damages related to the purported defect associated with the ASTM representation. First, GAF notes that Morocco does not allege anywhere in the Amended Complaint that his shingles have actually cracked, split or torn, that his roof has exhibited any leaking, or that Morocco has actually experienced any damage as a result of the alleged defect in the shingles. In support of its argument, GAF also directs the court to Morocco's warranty claim filed shortly before his initial complaint in this case, in which Morocco claimed that his shingles suffered a discoloration defect, did not mention any cracking, splitting, or tearing in any of his shingles, and represented that his roof was not leaking. *See* Affidavit of Linda Marion, Ex. A. Claim Form for Shingle Damage [Dkt. No. 23-7].

Contrarily, Morocco implores the court to focus exclusively on the allegations of the Amended Complaint and specifically claims that he has sufficiently alleged the requisite damage to other property.  In Plaintiff James Morocco's Opposition to GAF's Rule 12 Motion to Dismiss [Dkt. No. 30], Morocco notes several paragraphs of the Amended Complaint that he contends "clearly allege that the damage done here to Morocco and to the putative class members goes significantly beyond the replacement of the actual defective shingles themselves."  *Id.* at 20. Principally, Morocco relies upon the following allegations:

> "GAF's shingles are plagued by design and manufacturing defects that result in cracking and other problems that make the shingles defective. These defects make it inevitable that the shingles begin to crack, degrade, and fail before the end of their warranted or useful life and will cause property damage to the owners of buildings with such shingles." [Dkt. No. 18, ¶ 9].

> "Cracked shingles cause water to leak past the shingles, which in turn causes damage to property owned by Plaintiff and class members other than the shingles themselves (including other roofing material, the roof itself, structural elements, interior walls and ceilings, and building contents)." [*Id.* at ¶ 78].

> "Morocco, like all class members, has a real and present injury in that she owns a home with substandard and damaged shingles that do not comply with ASTM D3462. The damage includes the cost to replace the shingles to become code compliant and to avoid further damage to other parts of the structure caused by the defective and cracking shingles. Likewise, Morocco and putative class members have incurred or are reasonably certain to incur, the cost of repairing the damage to their other property that was caused by GAF's sale of defective shingles." [*Id.* at ¶ 134].

> "Morocco and the proposed class members suffered damage to property other than the GAF shingles, general and specific compensatory and contractual damages including, without limitation consequential, incidental, loss of use, diminution of value, attorneys' fees, costs and disbursements." [*Id.* at ¶ 135].

> "The degradation and failure of GAF's shingles causes damage to property other than the shingles themselves both while in use and during the removal and reinstallation process." [*Id.* at ¶ 177].

Other allegations in the Amended Complaint generally refer to "damage to property other than the GAF shingles, consequential, and incidental damages."  [*Id.* at ¶¶ 178, 189, 199].

Other than conclusory statements concerning speculative and hypothetical damage to Morocco's property and that of the putative class members, the court finds that Morocco has failed to sufficiently allege any damage to "other property."  Additionally, it is undisputed that this case does not involve any allegations of personal injury.  Without any allegation of actual injury to property other than the defective product itself and the consequential damages resulting from the replacement of the defective product, Morocco has presented the court with tort actions merely sounding in negligence and strict liability which fall squarely within the parameters of those actions barred by Florida law.

Morocco further urges the court to allow his negligence based tort claims to survive dismissal because he has made additional allegations concerning fraud and deceit against GAF. Indeed, Florida law recognizes several exceptions to the economic loss rule including claims for intentional torts, such as fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent. *Am. Aviation*, 891 So.2d at 543.  However, such claims must stand independently.  *Id.* at 537; *see also* 27 FLA. JUR. 2D *Fraud and Deceit* § 11. Accordingly, Morocco's allegations of fraud and deceit do not save his negligence and strict liability claims from the consequences of the economic loss rule.

Finally, Morocco argues that the economic loss rule does not apply where the complaint contains allegations of code violations.  Morocco correctly notes that a statutory claim for a code violation may withstand a motion to dismiss founded on the economic loss rule.  *See Stallings v. Kennedy Electric, Inc.,* 710 So.2d 195, 197 (Fla. 5th Dist. Ct. App. 1998) ("The economic loss rule does not apply to statutory causes of action and should not be used as a sword to defeat them."), *aff'd* 753 So.2d 1219 (Fla. 1999).  However, as GAF observes, Morocco has not asserted any cause of action against GAF for any code violations.  Therefore, Morocco can find

no escape from the economic loss rule for his negligence and strict liability claims under this theory either.

Based on the application of Florida's economic loss rule, the court must dismiss Morocco's claims against GAF for negligence, negligent failure to warn, and strict liability.

### B. Sufficiency of Allegations of Dangerous Condition of Product

Alternatively, GAF argues that Morocco's negligent failure to warn and strict liability claims fail because Morocco has not adequately alleged that the shingles are dangerous.

"It is well-established that Florida law imposes a duty to warn where a product is inherently dangerous or has dangerous propensities unless such dangers are known or obvious." *Farias v. Mr. Heater, Inc.*, 684 F.3d 1231, 1233 (11th Cir. 2012) (citing *Rodriguez v. New Holland N. Am., Inc.*, 767 So.2d 543, 544–45 (Fla. Dist. Ct. App. 2000)).  "[A]n inherently dangerous product is one burdened with a latent danger which derives from the very nature of the article itself."  *Advance Chem. Co. v. Harter*, 478 So.2d 444, 447 (Fla. Dist. Ct. App. 1985) (citations omitted).

Upon review of the Amended Complaint, the court finds that Morocco has made no factual allegations that the shingles at issue are unreasonably dangerous.  Although Morocco beseeches the court to accept his allegations that "Cracked shingles cause water to leak past the shingles, which in turn causes damage to property owned by Plaintiff and class members" and renders the shingles unreasonably dangerous, the Amended Complaint contains no allegations that the shingles themselves are unreasonably dangerous.  Morocco only makes a conclusory and speculative allegation that the purported defect in the shingles could cause a dangerous condition to occur on the property.  This is a far cry from alleging any "latent danger . . . derive[d] from the

very nature of the article itself." *Id.* Accordingly, GAF's request to dismiss the negligence based tort actions is equally appropriate on this alternative ground.

**Warranty Claims**

GAF seeks dismissal of Morocco's causes of action for breach of express warranty and breach of implied warranty under the premise that Florida law requires privity of contract to recover on a warranty claim and Morocco has failed to plead any factual allegations of the existence of privity between him and GAF.

### A. Privity of Contract

Florida law is well-established that a plaintiff must be in privity of contract with the defendant to recover on an implied warranty claim. S*ee Mardegan v. Mylan, Inc*., No. 10–14285–CIV, 2011 WL 3583743, at *6 (S.D. Fla. Aug 12, 2011) (citations omitted). Morocco does not include any allegations in the Amended Complaint that would allow the court to determine whether privity exists between him and GAF. In Morocco's Amended Complaint, he broadly proclaims that "Morocco and the installing contractor, when purchasing GAF Timberline shingles . . ." *See* Amended Complaint, at ¶¶ 118-19. However, the Amended Complaint never clearly alleges who actually purchased the shingles – Morocco or the installing contractor or both – and from whom the shingles were purchased. Morocco's failure to adequately plead the element of privity in support of his breach of implied warranty claim is fatal under Florida law and, therefore, the claim must be dismissed. *See Freeman v. Olin Corp.*, No. 5:12–cv–6–RS–GRJ, 2012 WL 1987019, at *1 (N.D. Fla. May 3, 2012) ("Failure to plead contractual privity in the complaint merits dismissal of an implied warranty claim under Rule 12(b)(6).") (collecting cases).

The law is not as equally settled in Florida as to the necessity of privity in breach of express warranty claims. Some courts have interpreted Florida law to require privity in breach of express warranty cases. *See, e.g. Mardegan*, 2011 WL 3583743, at *6 (collecting cases and quoting *Weiss v. Johansen*, 898 So.2d 1009, 1011 (Fla. 4th Dist. Ct. App. 2005) (stating that "in order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant.")). Other courts have observed exceptions under Florida law allowing breach of express warranty claims despite the lack of privity. *Id.* (collecting cases and quoting *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009) (applying Florida law and denying a motion to dismiss an express warranty claim on lack of privity based on "the particular facts of the case")). The court cannot determine, without further factual development, whether or not Morocco's express warranty claim is of such character as to except it from the privity requirement. Accordingly, the court will not dismiss his breach of express warranty claim for failure to adequately plead privity in his Amended Complaint.

### B. Warranty Disclaimer

GAF next contends that, even assuming Morocco can plead the requisite contractual privity, the court should dismiss Morocco's warranty claims because GAF effectively disclaimed all express and implied warranties except as set forth in GAF's Limited Warranty.

Florida statutory law allows for the exclusion or modification of warranties. Florida Statute §672.316 provides, in part,

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but, subject to the provisions of this chapter on parol or extrinsic evidence (§672.202), negation or limitation is inoperative to the extent that such construction is unreasonable.

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and

12

in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

3) Notwithstanding subsection (2): (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is" or "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty. . . .

In his Amended Complaint, Morocco specifically alleges that he and the installing contractor, "when purchasing GAF Timberline shingles, . . . relied on the accuracy of the designations affixed to the shingles and their packaging." Amended Complaint, at ¶ 118. As represented by Linda Marion, the GAF Smart Choice Shingle Limited Warranty ("Smart Choice Warranty") [Dkt. No. 23-8][2] was also affixed to every package of GAF shingles. The Smart Choice Warranty explicitly limits coverage and provides for a "**Sole and Exclusive Warranty**" that is "EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE." *Id.* (emphasis in original).

Upon review of the disclaimer in the Smart Choice Warranty document that GAF contends was affixed to the packaging of the shingles, which Morocco does not dispute, the court finds that the disclaimer complies with the statute allowing exclusion or modification of warranties. Specifically, the disclaimer appears in all capital letters directly below a heading captioned in bold type. Indeed, Morocco does not even refute GAF's argument that the disclaimer complies with the statutory requirements. Instead, Morocco argues that GAF's

---

[2] The GAF Smart Choice Shingle Limited Warranty is attached as Exhibit B to the Affidavit of Linda Marion submitted by GAF in support of its motion. Morocco has not disputed the authenticity of the document and has expressly relied upon the warranty in his Amended Complaint.

disclaimer and efforts to limit its express warranties fail because the Smart Choice Warranty is unconscionable.

Incorporating the arguments from Plaintiffs' Omnibus Opposition to GAF's Motion to Dismiss Based on Warranty and Repose Arguments [MDL No. 8:11-mn-02000-JMC, Dkt. No. 71],[3] Morocco contends that the warranty disclaimers and remedial limitations found in GAF's Smart Choice Warranty are unconscionable and unenforceable against him and members of the purported class because GAF knew of the alleged defects in the shingles when it sold them and concealed the defects from consumers to induce sales and avoid its obligations under its warranty.

> To prevail in an unconscionability action, a party must generally show both substantive and procedural unconscionability. Substantive unconscionability generally can be established by alleging and proving that the terms of a contract are onerous, unreasonable or unfair. Procedural unconscionability speaks to the individualized circumstances surrounding each contracting party at the time the contract was executed.

*Complete Interiors, Inc. v. Behan*, 558 So.2d 48, 52 (Fla. 5th Dist. Ct. App. 1990) (internal citations omitted).

In the Amended Complaint, Morocco makes various allegations concerning the unfairness and unreasonableness of certain provisions contained in the warranty claim form, which Morocco further alleges was not part of the Smart Choice Warranty attached to the shingle packaging. *See* Amended Complaint ¶¶127-130. Throughout the Amended Complaint, Morocco additionally alleges that GAF possessed superior knowledge concerning the condition of the shingles which Morocco and the purported class members did not possess, thereby placing them in a significantly inferior bargaining position at the time of the purchase. *See generally*

---

[3] GAF generally complains that Morocco's reliance on Plaintiffs' Omnibus Opposition to GAF's Motion to Dismiss Based on Warranty and Repose Arguments violates certain page limitations established by this court's Local Civil Rules. However, GAF has not suggested or requested any action from this court for the alleged violation of the Local Civil Rules.

Amended Complaint.  Based on the allegations of the Amended Complaint, the court finds that Morocco has sufficiently alleged that the warranty disclaimer was unconscionable or unenforceable.  Therefore, the court denies GAF's request to dismiss Morocco's warranty claims on this basis.

**Sufficiency of Fraud Allegations Under Federal Rule of Civil Procedure 9**

GAF seeks dismissal of all claims contained in Morocco's Amended Complaint which are based on allegations of fraudulent conduct (i.e., violation of the New Jersey Consumer Fraud Act ("NJCFA") (count V); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (count VI); and fraudulent concealment/equitable tolling (count IX)).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir.1984)), *abrogated on other grounds by, Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The United States Court of Appeals for the Third Circuit has generally held that the standard is met where the plaintiff pleads or alleges "the date, time and place of the alleged fraud or otherwise inject[s] precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3rd Cir. 2007) (internal citations and quotation marks omitted).  The "[p]laintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum*, 361 F.3d at 224.

Upon review of the Amended Complaint, the court finds that the majority of Morocco's claims of fraudulent conduct do not meet the heightened standard of Rule 9(b). Although Morocco's Amended Complaint contains copious allegations concerning GAF's advertising, marketing, and fraudulent concealment of information, Morocco fails to specify the time, place, or manner of these alleged fraudulent activities. In fact, Morocco's Amended Complaint predominantly rests on broad assertions regarding GAF's conduct in other litigation. Morocco's allegations against GAF regarding its alleged statements in brochures, on websites, in advertising, or in sales presentations fail the pleading standard of Rule 9(b) and cannot support Morrocco's fraud based causes of action.

However, Morocco has not made any independent claim for common law fraud. Therefore, Morocco need plead only one allegation of fraudulent conduct with sufficient particularity to survive dismissal, which the court finds that Morocco has sufficiently provided here. Specifically, Morocco claims that he and anyone purchasing the shingles on his behalf relied on the written representations regarding the ASTM standards and code compliance affixed to the shingles packaging purchased and installed on Morocco's home in Florida in July 2003. *See* Amended Complaint ¶¶ 117-120. This allegation supplies the necessary who, what, when, and where to meet the Rule 9(b) pleading standard. Therefore, the court will not dismiss Morocco's fraud based claims to the extent they rest on his allegations concerning the representations affixed to the shingle packaging purchased and installed on this home.

**Florida Deceptive and Unfair Trade Practices Act**

GAF next contends that Morocco's cause of action for violation of the FDUTPA is subject to dismissal because it is barred by the statute of limitations.

Because Morocco's FDUTPA claim is founded on a statutory liability, it is subject to a four year statute of limitations. Fla. Stat. § 95.11(3)(f). "It is axiomatic that under Florida law, a cause of action accrues, for statute of limitations purposes 'when the last element constituting the cause of action occurs.'" *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 906 (M.D. Fla. 2007) (citing Fla. Stat. § 95.031(1)). Relying on Florida law establishing that the "delayed discovery doctrine does not apply to causes of action under FDUTPA," *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip. Co.*, 793 So. 2d 1127, 1128 (Fla. 5th Dist. Ct. App. 2001).

GAF argues that Morocco's cause of action under the FDUTPA arose at the time of the shingle purchase on or about July 2003 and not at the time Morocco allegedly discovered the defect in the shingles.[4] Morocco does not refute GAF's recitation of the delayed discovery doctrine. Instead, Morocco effectively maintains that the delayed discovery rule is inapposite here because he has made sufficient allegations of fraudulent concealment against GAF to equitably toll the statute of limitations.

"As a general rule, fraudulent concealment constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the concealment by the owner of the cause of action." *S.A.P. v. State, Dept. of Health and Rehabilitative Services*, 704 So.2d 583, 585 (Fla. 1st Dist. Ct. App. 1997). Although not specifically enumerated in Florida's general tolling statute, *see* Fla. Stat. § 95.051, fraudulent concealment is widely accepted as an equitable basis for tolling a statute of limitations under Florida law. *See Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809 (Fla. 4th Dist. Ct. App. 1995) (finding that fraudulent concealment could toll the statute of limitations in a wrongful death action despite the lack of a statutory exception); *Vargas By and*

---

[4] The manner of ascertaining the accrual of a cause of action and the application of the delayed discovery doctrine is codified under Florida statutory law. *See* Fla. Stat. § 95.031 (delineating "the time within which an action shall be begun under any statute of limitations").

*Through Vargas v. Glades General Hosp.*, 566 So. 2d 282 (Fla. 4th Dist. Ct. App. 1990) ("Fraudulent concealment as an exception to the statute of limitations has as its philosophy that 'courts will not protect defendants who are directly responsible for the delays of filing because of their own willful acts.'") (quoting *Nardone v. Reynolds*, 333 So.2d 25, 36 (Fla. 1976), *modified on other grounds by, Tanner v. Hartog*, 618 So.2d 177 (Fla. 1993)). "To establish fraudulent concealment sufficient to toll the statute, the plaintiff must show both successful concealment of the cause of action and a fraudulent means to achieve that concealment." *S.A.P*, 704 So.2d at 585. "[A] party seeking to avail itself of the doctrine of fraudulent concealment must have exercised reasonable care and diligence in seeking to learn the facts which would disclose the fraud." *Berisford*, 667 So.2d at 812.

In his Amended Complaint, Morocco alleges that GAF affirmatively misrepresented the quality of its product by marketing and labeling its shingles as ASTM and code compliant despite GAF's alleged knowledge that such representations were false. *See generally,* Amended Complaint. Morocco further alleges that, due to the latent nature of the alleged defect, he had no reasonable method of discovering his cause of action until the product began to manifest an issue which would have prompted some manner of inquiry as to the source of the problem. *Id*. The court finds that dismissal of Morocco's FDUPTA claim would be premature given that he has sufficiently alleged fraudulent concealment.

**New Jersey Consumer Fraud Act**

GAF further argues that the court should dismiss Morocco's NJCFA claim because he is not entitled to any relief under the statute. Specifically, GAF complains that Morocco is a Florida resident, that he purchased and installed the subject shingles in Florida, and was exposed to the allegedly fraudulent statements in Florida; therefore, Florida substantive law applies to his

18

claims in accordance with New Jersey's choice of law rules.

New Jersey utilizes the "most significant relationship" test as found in the Restatement (Second) of Conflict of Laws. *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2011).

> This analysis, which must be performed on an issue-by-issue basis, is a two-step process. The first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies. Second, if a conflict does exist, the Court must determine which state has the most significant relationship to the claim, by weighing the factors set forth in the Restatement section corresponding to the plaintiff's cause of action.

*Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (internal citations and quotation marks omitted).

### A.  Existence of Actual Conflict

To determine whether Morocco may proceed with his cause of action under the NJCFA, this court must first evaluate whether there is a conflict between the consumer protection laws of Florida and New Jersey.  This inquiry has been held to be a purely legal issue that requires no factual background.  *See Montich*, 849 F. Supp. 2d at 445.  Although neither party expressly addressed this threshold issue in their briefing, the court presumes that the parties intended to aver the existence of an actual conflict between the laws of the two jurisdictions concerning misleading advertising because in the absence of a conflict, New Jersey law would necessarily apply and it would have been unnecessary for the parties to address the significant relationship prong of the choice of law analysis.

The NJCFA, *see* N.J. Stat. § 56:8-1 *et seq.*, "is designed to address 'sharp practices and dealings . . . whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.'" *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (quoting *Daaleman v. Elizabethtown*

*Gas Co.*, 77 N.J. 267, 271, 390 A.2d 566 (1978)). To state a claim under the NJCFA, "a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss. A party need not plead reliance under the NJCFA." *Id*. at 446.

Because Morocco's NJCFA claim is founded, at least in part, on GAF's alleged practice of "falsely and deceptively labeling and advertising" the Timberline shingles, the equivalent statutory claim under Florida law is established under Fla. Stat. § 817.41 for misleading advertising. "In order to prove a violation of Section 817.41, Florida law requires the plaintiff to prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement." *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992). Given that a claim under the NJCFA does not include the element of reliance but similar claims under Florida consumer protection laws do, there is a conflict of law. Therefore, the court may not apply the NJCFA without further inquiry into the relationship between Morocco's claims and the disputed jurisdictions.

### B. Significant Relationship Test

To determine which jurisdiction has the most significant relationship to Morocco's claims in this case, the court "must weigh the factors set forth in the Restatement section that corresponds to [Morocco's] cause of action. *See Montich*, 849 F. Supp. 2d at 445. Where a plaintiff raises claims based on fraud and misrepresentation, Restatement Section 148 applies. *Id*. It provides

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant

relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
(b) the place where the plaintiff received the representations,
(c) the place where the defendant made the representations,
(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflict of Laws* § 148.  New Jersey courts also consider the general conflict of law principles found in Restatement Section 6 in analyzing the Section 148 factors, including "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states."  *P.V. v. Camp Jaycee*, 197 N.J. 132, 147, 962 A.2d 453 (2008) (citing to *Restatement (Second) of Conflict of Laws* § 6) (citations omitted).

Taking the allegations of the Amended Complaint as true, it is apparent that subsection (1) is inapplicable here as Morocco alleges that GAF's advertising and marketing statements and representations were made or originated from GAF's headquarters in New Jersey but acknowledges that his exposure to the statements and representations was limited to his review of the shingle packaging in Florida.  Accordingly, the court will apply the factors specified in subsection (2) of Restatement Section 148.  Based on the allegations of the Amended Complaint, Morocco allegedly became aware of and relied upon GAF's representations in Florida.

Additionally, the Amended Complaint alleges that the subject shingles were located in Florida at all relevant times of Morocco's awareness and reliance on the representations. Morocco alleges that GAF made the representations from its headquarters in New Jersey. Lastly, the contract performance obligation factor has no application here, and the remaining factors have neutral application because each party resides in their respective jurisdictions. In sum, three of the six factors of Section 148 weigh in favor of applying Florida law. Viewing this in consideration of the general conflict of law principles found in Restatement Section 6, the court finds that Florida law is applicable to Morocco's claims and he may not recover under the NJCFA. This finding is consistent with other courts' evaluation of similar claims. *See e.g., Montich*, 849 F. Supp. 2d at 449 ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2).") (collecting cases). Therefore, the court dismisses Morocco's NJCFA cause of action against GAF with prejudice.

**Declaratory and Injunctive Relief**

Finally, GAF seeks dismissal of Morocco's separate claims for a declaratory judgment and injunctive relief on the basis that Morocco has only asserted alternative remedies and not independent causes of action.

A claim for a declaratory judgment is "a legal remedy available in cases brought pursuant to some other law." *Zolin v. Caruth*, No. 3:09cv38–WS, 2009 WL 2982907, at *7 (N.D. Fla. Sept. 14, 2009) (noting that statutory mechanisms such as the Declaratory Judgment Act are procedural only) (internal citiations omitted). Additionally, "[a]n injunction is a remedy, not a

cause of action. 'There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6).'" *Sylvester v. GE Capital Retail Bank*, No. 6:12–cv–341–Orl–31TBS, 2012 WL 3522691, at *4 (M.D. Fla. Aug. 14, 2012) (quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005)).  While Morocco may request declaratory and injunctive relief as remedies where appropriate based on properly stated causes of action, the court must conclude that the Amended Complaint fails to state an independent basis for either declaratory or injunctive relief separate and apart from the other causes of action asserted in the Amended Complaint.  Therefore, the court shall consider Morocco's claims for injunctive and declaratory relief as alternative and/or additional remedies for the causes of action already asserted but dismiss the claims as independent causes of action.

## CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** GAF Materials Corporation's Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 23] as set forth herein.  Plaintiff James Morocco may amend his First Amended Complaint to address the deficiencies noted by the court in this order, provided that Morocco may not amend the pleading to include any claim for a code violation which does not apply to manufacturers.  Any such amended pleading must be filed within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

January 10, 2013
Greenville, South Carolina